# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

DOROTHY A. DAVIS,                  )
)
            Plaintiff,            )
)         Civil Action
            vs.                )         No. 08-3391-CV-S-JCE-SSA
)
MICHAEL J. ASTRUE,          )
Commissioner of Social Security,   )
)
            Defendant.        )

## O R D E R

Plaintiff is appealing the final decision of the Secretary denying her application for widow's disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § § 401, et seq. Pursuant to 42 U.S.C. § 405(g), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

### Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion

Plaintiff, who was 59 years old at the hearing before the ALJ, has a college degree and additional certification as a reading resource teacher. She alleged in her disability report that she is disabled due to fatigue, memory loss, poor concentration, fibromyalgia, asthma, high blood pressure, headaches, muscle spasms, allergies, poor and blurry vision, sores and rashes on her body, pain, colon surgery, and loss of bowel control.

A review of the record indicates that plaintiff filed an application for disabled widow's benefits on June 20, 2003, and claimed that she became disabled on May 17, 2002, as this was her last day of working full-time as a school teacher, due to her physical impairments. She had worked as a teacher at this school for the past ten years. Her claim was initially denied on August 6, 2003; she testified at a hearing on December 9, 2004, and at a subsequent supplemental hearing on September 13, 2005.

At the first hearing before the ALJ, plaintiff testified that she had a lot of side effects from medication; if she takes stool softeners or water pills, she has to be close to a bathroom; the pain medication, like Hydrocodone, makes her tired and sleepy; and the inhalers and nebulizer machine make her nervous. She had an excision of a rectal mass in October of 2003, but before that she had had bowel problems and had had colon surgery in the 1970s. She was able to work after that, but the colon problem kept getting worse. At her teaching job, she had help from other people with carrying and lifting; had to cancel classes some days because she felt so bad; and eventually quit her job because she didn't think it was fair to the students or the school for her to keep working. Plaintiff testified that she had problems with fibromyalgia before she quit, including weakness, pain, balance issues, muscle spasms, stiffness, and swelling. She stated that

3

she had a problem with open sores on her body, which had been on going for the past three years, and for which she had to take antibiotics. Plaintiff stated that she had bowel incontinence problems, which she cannot control at times. If she is going somewhere, she has to plan ahead, get plenty of rest, take her medications, and avoid eating or drinking the day that she is going out. She stated that when she was teaching, she did not eat or drink anything until she got home at night because she had no bowel control. She also had a lot of problems at school with asthma and allergies. Cleaning supplies, chalk, ink and paper bothered her, and she had to use a nebulizer, which took 20 to 30 minutes. She has problems with depression and anxiety, and has pain and headaches, almost daily, from high blood pressure. She is also tired all the time, has vision problems that vary day to day, and has problems with memory and concentration. She uses a three-prong cane for assistance in getting out of bed because of pain. Plaintiff testified that she does avoid going out because of all her problems, especially with her colon. She stated that she is limited in her ability to sit, walk, lift and carry, bend over, and stoop or crouch. She does a little of the housework, although her family helps. She spends about five hours a day in a recliner. She has a lot of trouble with falling, and had her arm in a sling the day of the hearing as a result of a fall. She has not seen a rheumatologist for the fibromyalgia.

At the supplemental hearing, the medical expert reviewed the records, noting that plaintiff had just been in the hospital for 4 days, had two stents placed in her heart, and had recently had her gall bladder removed. She also reviewed the records regarding colon surgery and a subsequent hemorrhoidectomy. The medical expert testified that plaintiff's obesity is a severe impairment; that her heart condition would be considered severe for a period of time; that the medical records do not confirm a diagnosis of fibromyalgia; and she did not have a

pulmonary function test to make a determination regarding a diagnosis of asthma. It was her testimony that plaintiff's impairments would not meet or equal a listed impairment. She testified that plaintiff would have had some functional limitations from the alleged onset date regarding lifting, walking, and standing because of the severe impairment of obesity. In terms of the limitations created by the recent heart problems, the medical expert testified that these limitations would likely resolve after a period of time.

Plaintiff testified at the supplemental hearing that since the time of the first hearing, in December of 2004, she'd had gall bladder surgery and the stents put in her heart. It was her testimony that since she got the disability determination from Medicaid that she was disabled, as well as from her teacher retirement, she was able to go to the doctor more. She stated that she'd been on Hydrocodone for a couple of years, and Skelaxin for muscle spasms, which caused her some problems with fatigue and balance. It was her testimony that because of the colon polyp, she was in constant pain, and had bleeding and incontinence, which caused her to have accidents. It also caused her problems with sitting, standing, walking and lying down, and she was in constant pain. Plaintiff testified again regarding the previous surgery that she had had for this problem, in which the doctor cut her sphincter muscle, and she was told she would never work again. She took mineral oil for three years, and then started using stool softeners and other things for her bowel problems. It was her testimony that the school year she became disabled was worse than others because the mass was worse, and she had to use the nebulizer more at school because of her asthma. She also stated that her whole body hurt, that she could not walk or carry things, and that she needed to lie down and take naps about twice a day. She testified that she loved her job and that she would have gotten a good increase in salary, but that she

could not have stayed the three more years it would have taken.  She had worked there ten years, and the school made some allowances for her, but even with sick days and going home early, she barely made it until the end of the year.

The vocational expert testified that plaintiff would not be able to return to her past relevant work, but that she had transferable skills and could perform some skilled and semiskilled work, such as a certification specialist.  If the claimant had to stop at random times to use a nebulizer or had to take frequent bathroom breaks, this could impair the ability to perform full-time work.

The ALJ found that plaintiff met the insured status requirements on May 17, 2002, the date she claims that she became unable to work.  He further found that the medical evidence established that plaintiff suffers from coronary artery disease and obesity, which are severe.  He found that the medical evidence did not support a diagnosis of fibromyalgia.  It was the ALJ's finding that plaintiff was not fully credible.  He found that plaintiff has the Residual Functional Capacity ["RFC"] to lift and carry no more than 10 pounds frequently and 15 pounds occasionally; that she stand and/or walk two hours total in an eight hour workday; that she has no restriction on sitting; that she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and that she should avoid exposure to extreme heat and unprotected hazards, such as machinery and heights.  It was also his finding that, before August of 2005, plaintiff had the ability to lift and carry 15 pounds frequently and 20 pounds occasionally; stand and/or walk at least six hours during an eight-hour workday; sit without restrictions; frequently balance; occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; and had no environmentally related impairments.  The ALJ found that plaintiff "is currently unable to perform her past

relevant work, but was able to perform her past relevant work as a resource teacher before September 2005 (20 CFR 404.1565)." [Tr. 28]. The ALJ further found that plaintiff had acquired work skills from her past relevant work that are transferable to other occupations, including a limited range of skilled and semi-skilled sedentary work. Therefore, it was the ALJ's finding that she is not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because it is not supported by substantial evidence in that he improperly determined that her asthma and headaches were not severe impairments; that he erred in his RFC finding; that he erred by improperly relying on the opinions of the consultative examiners and the medical expert over her treating physicians' opinion; and that he erred in his credibility analysis.

Plaintiff contends that the ALJ erred in finding at Step Two of the evaluation process that asthma and severe headaches were not severe impairments. A full review of the medical records indicates that plaintiff was treated for asthma; that she was prescribed Medrol to assist with breathing problems in 2002; and that she has used various inhalers and a breathing machine for that condition. She complained of breathing problems as early as January of 1999; in fact, the examining consultant, Dr. Ballard, noted mild wheezing and that her chest x-ray showed a nodule in the left upper lung. The medical records indicate that plaintiff complained of shortness of breath to various physicians; that she related that she had had pneumonia and bronchial infections as a child; that she had difficulty walking more than a block because of breathing problems; and that she had problems even with the use of asthma medication. Plaintiff complained of asthma in her testimony and related how the need to use a nebulizer interfered with her ability to teach. Additionally, she testified regarding how various environmental factors

affected her breathing, and at the supplemental hearing, testified that her asthma had gotten worse. Regarding asthma, the ALJ simply noted a lack of aggressive treatment for asthma as the reason for determining that it was non-severe. Based on the record as a whole, the Court finds that the ALJ did not properly evaluate the severity of plaintiff's asthma, and did not provide a reasonable basis for concluding that it was not a severe impairment. There is substantial evidence in the record as a whole to conclude that plaintiff's asthma presented more than a slight abnormality that could significantly limit basic work activity. Bowen v. Bowen, 827 F.2d 311 (8th Cir. 1987).

Additionally, plaintiff contends that the ALJ erred in the weight he gave to the opinions of the treating physicians. While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). Only if the opinion is unsupported by medically acceptable clinical data may it not be given great weight. Smallwood v. Chater, 65 F.3d 87, 89 (8th Cir. 1995). Plaintiff contends that the ALJ erred by relying on the medical opinions of Dr. Winkler, the medical records expert who did not personally examine her, and Drs. Ballard and Ball, consultative examiners. She contends that the ALJ erred by giving great weight to the opinion of Dr. Ballard, who saw her one time, in September of 2002, for a cursory examination, and who opined that despite her various complaints, she should have been able to perform her past relevant work as a teacher. Similarly, she objects to the reliance on the opinion of Dr. Ball, who saw her for a brief, one-time examination, in July of 2003. Plaintiff contends that the ALJ should have relied on the opinions

of her treating physicians, Drs. Blocker and Suva.  She asserts that the ALJ erred in rejecting the

Medical Source Statement-Physical ["MSSP"] of Dr. Blocker because he believed that it was not

a fair evaluation of her normal ability to function, given that it was filled out three weeks after

she underwent rectal surgery.  She asserts that the ALJ focused on the status of her rectal

surgery, and failed to properly consider the nature of her other impairments. Plaintiff asserts that

she began seeing Dr. Blocker in August of 2003 for a variety of problems, and saw him until

February of 2004.  He completed the MSSP in November of 2003; she asserts that it was error

on the part of the ALJ for him to have concluded that the MSSP was based on her status post-

rectal surgery when Dr. Blocker treated her for severe constipation, hypertension, her complaints

of fibromyalgia, chronic aches and pains, sores of unknown origin, congestion, wheezing and

shortness of breath, a large rectal polyp, pain in her left eye, and cluster headaches between

August and November of 2003.  In January of 2004, Dr. Blocker concluded that she suffered

from chronic headaches, asthma, hypertension and non-healing sores with unknown etiology.  In

February, he informed her that her MRI showed mild ischemic cardiovascular disease; he also

ordered physical therapy for chronic neck pain.  Therefore, plaintiff submits that the ALJ erred

in discounting Dr. Blocker's overall medical opinion, and placed too much weight on her

condition after the rectal surgery in October of 2003.  Regarding Dr. Suva, plaintiff contends that

the ALJ erred in rejecting the opinion of that physician on the basis that she did not have a

treating relationship with him, and on the basis that his MSSP was not an accurate evaluation of

her ability to function because it was given two months after her rectal surgery.  She asserts that

she saw Dr. Suva for a disability examination in November of 2003; his impressions were that

she suffered from fibromyalgia, moderately severe; persistent bronchial asthma; status post

9

rectal surgery; gallbladder disease; controlled hypertension; and marked obesity. It was Dr. Suva's opinion that plaintiff was permanently disabled. The doctor completed an MSSP in December of 2003, and again in July of 2004; in both, the doctor indicated that she suffered from severe physical restrictions, that she would need to lie down every one to two hours during the work day to alleviate pain symptoms, and that she suffered from dull alertness and concentration problems due to narcotic medications.

After a full review of the record and the ALJ's decision, the Court finds that is was error to not have given controlling weight to the treating physician, Dr. Blocker, and that there is not substantial evidence in the record as a whole to support the ALJ's decision that plaintiff's impairments were not disabling. There is nothing in the record to suggest that Dr. Blocker's opinion is not well-supported, and that it is inconsistent with other substantial evidence in the record. The medical records from Dr. Blocker confirm that he treated plaintiff for various breathing problems including congestion, shortness of breath, mild wheezing, and that he prescribed Albuterol and Atrovent, in the form of inhalers and a nebulizer. He also treated her for, among other conditions, cluster headaches, rectal hemorrhoids and a large rectal polyp, for which he scheduled her for surgery to rule out malignancy. Dr. Blocker also noted plaintiff's history of fibromyalgia and high blood pressure.

The fact that the MSSP was given three weeks after plaintiff underwent rectal surgery was the only reason the ALJ provided for rejecting Dr. Blocker's opinion. He stated that, although the opinion "would appear to support a finding of disability," the MSSP was "not a good picture of her usual ability to function." [Tr. At 27]. The ALJ relied, instead, on the opinions of two one-time examining consultants, and that of a medical records expert. In the case

of Dr. Ballard, he opined that plaintiff did not have any limitations that would prevent her from performing teaching activities. Although the ALJ also rejected the opinion and MSSP of Dr. Suva because he only saw plaintiff one time, the record indicates that Dr. Suva saw her for a disability determination, and that upon performing a physical examination and reviewing her complaints, he opined that she "is permanently disabled from the confluence of above listed diagnoses." [Tr. 191]. Those diagnoses included Dr. Suva's impression that plaintiff suffered from fibromyalgia, moderately severe bronchial asthma, "[s]tatus post rectal surgery for anal fistula and benign rectal growth with anal sphincter dysfunction," [Tr. 191], gallbladder disease, controlled hypertension, and marked obesity. A subsequent MSSP, provided by him in July of 2004, again indicated that plaintiff had multiple postural and environmental limitations, and that she would need to lie down one or two times in four hours for a 10-15 minute duration; further, the doctor opined that her pain medication could cause drowsiness or loss of concentration/attention. [Tr. 202]. While Dr. Suva cannot be considered a treating physician, his opinion of the severity of plaintiff's multiple impairments provides additional medical support for the opinion of Dr. Blocker, who was a treating physician for plaintiff.

Based on a full review of the record, the Court finds, therefore, that the ALJ erred in not affording significant weight to the opinion of Dr. Blocker, while relying instead on the opinions of two consultative examiners and a medical records expert. Accordingly, the Court finds that the decision should be reversed.

Based on the foregoing, the Court finds that there is not substantial evidence in the record to support the ALJ's decision that plaintiff is not disabled. Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted.  It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date:  2/3/10